# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

                Plaintiff/Respondent,

v.                                               No. CIV 08-737 MCA/ACT
                                                 No. CR 07-1071 MCA

FRANCISCO GRANADOS-FLORES,

                Defendant/Movant.

## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

### Findings

1.       On August 7, 2008, Movant Francisco Granados-Flores ("Granados") filed a motion under § 2255 to vacate, set aside, or correct sentence.[2]  [Doc. 1.]  In his § 2255 application, Granados asserts four claims:  (1) his conviction was obtained by "the unconstitutional failure of the prosecution to disclose evidence favorable" to Granados; (2) Granados' defense counsel failed to comply with Granados' request to appeal his "harsh sentence;" (3) defense counsel rendered

---

[1]Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations.  A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations.  If no objections are filed, no appellate review will be allowed.

[2]In his § 2255 motion, Granados makes several references to "attachments," but nothing was attached to the petition.  [Doc. 1.]  In a later pleading, Granados requested unlimited time to supplement his petition and further stated that he sought copies of the plea and sentencing hearing transcripts.  [Doc. 6.]  The Court denied the request to supplement but informed Granados that the two transcripts were attached to the government's response.  [Doc. 8.]

ineffective assistance of counsel during Granados' trial; and (4) defense counsel was ineffective during plea negotiations when counsel purportedly assured Granados that he would receive a shorter sentence than he did.  [Doc. 1.]

2.      On September 19, 2008, the United States filed a timely response, with exhibits, to Granados' § 2255 motion.  [Doc. 7.]  In its Response, the United States makes a number of clarifications to the allegations in Granados' Motion.  For example, Granados pled guilty and did not proceed to a trial in this matter.  Thus, there is no viable claim for ineffective assistance of counsel at trial as there was no trial.  In addition, Granados did not sign a written plea agreement but, rather, pled to an Information.  The government denies that any information was withheld from Granados and further provides an Affidavit from Granados' attorney in which the attorney testifies that there is no basis for an ineffective assistance of counsel claim.  [Doc. 7, Ex. 6.]  In addition, while Granados argued that defense counsel failed to appeal the "harsh" sentence, defense counsel did appeal the sentence.  The Tenth Circuit's opinion rejecting the appeal, <u>United States v. Granados</u>, 2008 WL 2441045 (10th Cir. June 18, 2008), is attached as Exhibit 5 to the government's Response.

3.      On September 18, 2008, Granados filed a motion asking for unlimited time to supplement his petition with information that might arise.  [Doc. 6.]  The Court denied this motion but allowed Granados until October 21, 2008, to file a reply if one was warranted.  [Doc. 8.]

4.      On October 9, 2008, Granados filed a Motion for Judgment on the Merits [Doc. 9], apparently believing that the government had not filed a response to his § 2255 motion.  On October 20, 2008, the Court denied Granados' Motion for Judgment on the Merits, finding that the government already filed a timely response to the § 2255 Motion.  [Doc. 13.]

2

5.      On October 17, 2008, Granados requested another extension to file a reply in opposition to the government's response.  [Doc. 11.]  The Court permitted Granados until November 21, 2008 to file a reply, but advised Granados that no additional extensions of time would be granted.  [Doc. 12.]

6.      On November 21, 2008, Granados filed a reply.  [Doc. 14.]  In the reply, Granados essentially reiterated the arguments raised in previous pleadings.  He also argued that the Sentencing Court did not advise him of his right to appeal his sentence, "regardles [sic] of his plea."  [Doc. 14, p. 1.]  Granados claimed that his right to file an appeal was violated because he was unaware of that right.  He made additional arguments regarding alleged ineffective assistance of counsel.

7.      In making its recommendation on this matter, the Court examined all of the pleadings and attachments in this civil matter, along with pleadings in the criminal case, transcripts of the plea and sentencing proceedings, and a copy of the Presentencing Investigation Report ("PSR").  After carefully considering the pleadings, attachments, argument by the parties and the pertinent law, the Court recommends that Granados' § 2255 petition be denied.  Because it is possible to resolve the issues on the pleadings and the record establishes conclusively that Granados is not entitled to relief, no evidentiary hearing is necessary.  *See* 22 U.S.C. § 2255; United States v. Kennedy, 225 F.3d 1187, 1193 (10th Cir. 2000), *cert. denied,* 532 U.S. 943 (2001).

## **Background**

8.      On March 22, 2007, a criminal complaint was filed against Granados in United States v. Francisco Granados-Flores, 07-MJ-632 CG.  [Doc. 1 in No. CR 07-1071 MCA.]  The criminal complaint alleged that on March 19, 2007, Border Patrol Agents encountered and arrested Granados west of Deming, New Mexico.  Granados admitted to illegally crossing the U.S.-Mexico border.

Granados also admitted he was a citizen of Mexico, who was illegally in the United States. Granados' criminal records included a conviction for Indecency with a Child-Contact on about August 30, 2002 in Texas.[3]  Immigration records indicated Granados had one prior deportation on about October 23, 2003.  There was no evidence to show Granados applied for or received consent to lawfully enter the United States.  Granados was charged with a violation of 8 U.S.C. § 1326(a)(1)(a)(2)(b)(2).  [Id.]

9.     On March 23, 2007, the Court appointed attorney James Baiamonte to represent Granados.  [Doc. 4.]

10.     On March 27, 2007, Granados waived the preliminary hearing in exchange for pre-indictment discovery and an opportunity to engage in pre-indictment plea negotiations.  Granados also agreed to a continuance of the grand jury presentment.  [Doc. Nos. 5, 6.]

11.     On April 5, 2007, the government sent discovery, a proposed Information, and Waiver of Indictment, Consent and Plea Agreement to counsel for Granados, asking Granados to accept or reject the plea offer within thirty days.  [Doc. 7, p. 2, Ex. 1.]  The April 5, 2007 letter explained that Granados did not qualify for "fast track treatment" because of his criminal history which included a crime of violence or other disqualifying type of felony conviction.  Some of the discovery sent to Granados showed that he pled guilty to Indecency with a Child-Contact and was sentenced by a Texas court on June 23, 2003 to a period of ten years probation.

12.     The government's April 5, 2007 letter also stated that based on Granados' criminal history, the government believed Granados would receive a base offense level of 24.  With acceptance of responsibility, the adjusted offense level would be 21.  If Granados accepted the

---

[3]The original charge was Aggravated Sexual Abuse of a Child (Under 14 years old).  [PSR, p. 6.]

government's pre-indictment plea offer, the government agreed that Granados could file a motion for downward departure.  However, the government stated it might file a response in opposition. The government advised it would recommend a sentence at the lower end of the sentencing guideline range.  [Id., Ex. 1.]

13.     On May 1, 2007, counsel for Granados informed the government that Granados would plead guilty to the Information.  [Doc. 7, p. 2.]  A felony plea hearing was set for May 29, 2007.  [Doc. 9.]

### *May 29, 2007 Plea Hearing*

14.     At the May 29 plea hearing, Granados was represented by counsel, and the proceedings were translated into Spanish.  [Doc. 7, Ex. 3.]  Granados waived his right to indictment and pled guilty to a one-count Information charging him with re-entry of a removed alien, in violation of 8 U.S.C. § 1326(a) and (b).  [Doc. Nos. 11-13.]  Granados did not sign a written plea agreement.  Because he pled guilty to an Information, he was not indicted.  [Doc. 7, p. 3.]

15.     At the plea hearing, Granados testified that he intended to plead guilty to the Information and that the Information had been read to him in his native language of Spanish.  He further testified that he had gone to the sixth grade in school, had not been treated recently for mental illness or drug/alcohol addiction, was not under the influence of any drug, medication or alcohol, and was pleading guilty pursuant to the agreement reached with the government.  [Doc. 7, Ex. 3.]

16.     Mr. Granados also testified that he was fully satisfied with Mr. Baiamonte as his attorney.  [Doc. 7, Ex. 3, p. 4.]

17.     The Court explained to Granados that it had the original Information charging him with a crime of having re-entered the United States after being previously deported, the waiver of indictment form that waived his right to be charged by a grand jury, and a consent form that allowed the Magistrate Judge to take his guilty plea.  Mr. Granados agreed that all three documents had been read to him in Spanish, that he had the opportunity to ask his attorney any questions that he had regarding the documents, and that he fully understood the documents.  [Doc. 7, Ex. 3, p. 5.] Granados stated again that he was fully satisfied with his attorney.  [Id., pp. 5-6.]

18.     The Court asked Granados if anyone made any promise or assurance to him in an effort to influence him to plead guilty, and Granados answered "no."  [Id.., p. 6.]

19.     Granados understood that he was pleading guilty to a felony offense and that by doing so, he gave up certain rights.  Granados understood that he had the right to persist in a plea of not guilty and proceed to a jury trial.  [Id., pp. 6-7.]  The Court further explained that if Granados proceeded to trial, he was presumed innocent unless the government could prove he was guilty beyond a reasonable doubt.  [Id., p. 7.]  Granados understood that he had the right to have assistance of counsel throughout his case, including a trial.  If he were to elect a trial, Granados understood he had the right to compel the attendance of witnesses to put on a defense, hear the testimony of all witnesses, and have witnesses cross-examined.  He understood that he could decline to testify at trial and that his decision not to testify or put on evidence could not be held against him.  [Id., pp. 7-8.]

20.     In pleading guilty, Granados understood he would not be proceeding to trial and that he was giving up his right to a trial.  [Id., p. 8.]

21.     At the plea hearing, government counsel described the maximum penalty Granados faced.  Depending on his criminal history, Granados could be sentenced to a maximum statutory

term of imprisonment of 20 years, a fine of $250,000, 3 years of supervised release, a special penalty assessment, and another deportation.  [Id., pp. 8-9.]  Granados testified that he understood he could be sentenced to this maximum punishment if his plea was accepted.  He further understood that he did not have to plead guilty that day and could wait and plead guilty in front of the judge who was to sentence him.

22.     The Court noted that Granados signed each of the forms presented to him and had reviewed them with counsel.  The Court approved the waiver of indictment and Granados' consent to proceed that afternoon with his guilty plea.  The Court found that Granados had "full knowledge" of the meaning and effect of the forms.  [Id., p. 10.]

23.     The Court again asked Granados if anyone had attempted to force him to plead guilty, and Granados responded "no."  [Id.]  Granados further agreed that he was pleading guilty of his own free will and because "he was, in fact, guilty."  [Id.]

24.     The Court explained that in order to plead guilty to any crime, a defendant has to admit his guilt as to the elements of the crime.  The Court set forth each element of the pertinent crime, inquired whether Granados understood the elements of the crime, and asked Granados if each element was satisfied based on the facts.  [Id., at pp. 11-12.]  Granados stated that he was not a citizen of the United States when he entered this country, he knowingly entered the United States, he had been deported from the United States previously, and he did not have the permission of the United States to be present within the country.

25.     Granados then pled guilty to the one-count Information.  The Court found that Granados was fully competent and capable of entering an informed plea, he was aware of the nature of the charge and consequences of the plea and his plea of guilty was a knowing and voluntary plea

supported by an independent basis in fact containing each of the essential elements of the offense. The Court then accepted his plea of guilty and adjudged him guilty of the offense of which he was charged.  The Court explained that the sentencing judge had the right to accept or reject the plea through the date of the sentencing hearing.

26.     Finally, the Court explained that a written PSR would be prepared by a probation officer, Granados would be asked to give information for the report with assistance of counsel, and the report would be used to assist the sentencing judge.  Once the report was completed, Granados would receive a copy and would have an opportunity to submit written objections before being sentenced.  Granados also was informed that he would be given the opportunity to make a statement to the sentencing judge and have his attorney make a statement to the judge.  Granados understood this information and had no questions.  [Doc. 7, Ex. 3, pp. 14-15.]

### *PSR and Related Pleadings*

27.     On July 5, 2007, Granados' PSR was disclosed.  [PSR, p. 2.]  The total offense level was 21 after a 16-level enhancement to the base offense level of eight because Granados had been previously removed from the country subsequent to a conviction for a crime of violence.  Granados was given a three-level reduction for his acceptance of responsibility.  [Doc. 7, p. 5; PSR, p. 5.]  A total offense level of 21 combined with a criminal history category of II resulted in an advisory sentencing range of 41 to 51 months.  [PSR, p .5.]  If Granados had not pled guilty, his total offense level would have been 24 rather than 21, resulting in a guideline range of 57 to 71 months imprisonment.  In reaching these computations, Granados' criminal and social history and the details of his illegal re-entry were considered, but it was concluded that a downward departure from a guideline sentence was not warranted.

28.     Specifically, the PSR showed that Granados had one prior criminal conviction, from Tarrant County, Texas – Indecency with a Child–Contact (felony).  Granados was arrested for that crime in August 2002, pled guilty to the charge in June 2003, and was sentenced to probation for a period of ten years.  Granados was initially charged with Aggravated Sexual Abuse of a Child (Under 14 years old) after his 17-year old stepdaughter told her mother, who was Granados' common law wife, that Granados had been molesting her since she was 12 years old.  Granados' wife reportedly was so upset that she pointed a gun at Granados which discharged while he tried to wrestle it from her.  No one was injured during this incident.  Police responded to the residence, and Granados' stepdaughter provided the police with written statements detailing how Granados abused her.  [PSR, p. 6.]

29.     In calculating Granados' criminal history, the PSR indicates that Granados was currently on probation from the earlier felony conviction; thus, two points were added.  [PSR, p. 7.] The total criminal history was 3, which established a criminal history category of II.  [Id.]

30.     The PSR further states that through his attorney, Granados apologized for returning unlawfully to the United States, admitted he knew it was illegal for him to return to the U.S., and accepted responsibility for his criminal conduct.  [PSR, p. 4.]

31.     On July 24, 2007, counsel for Granados filed a sentencing memorandum, seeking a sentence of 24 months.  Defense counsel argued that the Texas courts only imposed a sentence of probation for Granados' prior conviction and that probation would have been an unlikely outcome, had the conduct been as egregious as the charge suggested.  Defendant made no objections to the calculations in the PSR.  Counsel for Granados stated that the PSR was read in its entirety to

Granados in Spanish and that Granados did not allege any factual dispute as to the information contained in the PSR.  [Doc. 7, Ex. 4, p. 2; Doc. 16 in No. CR 07-1071, p. 1.]

32.    On July 30, 2007, the government responded in opposition to the sentencing memorandum, arguing that the sentence be set within the 41-51 month guideline range.  [Doc. 17 in No. CR 07-1071.]

### *Sentencing Proceeding*

33.    On August 9, 2007, the Honorable M. Christina Armijo held Granados' sentencing proceeding.  The Court accepted Granados' guilty plea and determined that the PSR correctly calculated the offense level as 21 and the criminal history category as II.  [Doc. 7, Ex. 4.]

34.    Defense counsel stated he stood by his Sentencing Memorandum and had reviewed the PSR with his client.  The PSR was read to Granados in Spanish and Defendant had no factual disputes with the PSR.  Defense counsel  described his only argument as a legal argument and noted that he was asking for "extraordinary relief."  The low end of the guideline range was 41 months but defense counsel asked that Granados be sentenced to a period of 24 months, based on the Texas courts' earlier sentence of probation.  Counsel asserted that a 24-month sentence was considerable and a very severe in view of Granados' lack of criminal activity.

35.    Granados spoke at the sentencing hearing, stating that he made a mistake by returning to the United States and apologized for doing so.  If Granados was shown "some consideration for his case," Granados promised the Court that he would not return to the United States.  [Doc. 7, Ex. 4, p. 4.]

36.     The government opposed the relief requested by Granados, arguing that the 16-level enhancement was proper because of Granados' conviction for a crime of violence.  The government proposed a sentence consistent with the guideline range of 41 to 51 months.

37.     The Court observed that Granados' present offense was committed during the time he was still on probation for his first conviction.  This fact was significant to the Court.  In addition, the Court did not find anything unusual in Granados' medical, social or psychological history that warranted extraordinary relief.  The Court considered the Booker factors and concluded that the sentence guidelines adequately took into account all the pertinent concerns.  The Court found that the advisory guideline range of 41 to 51 months was a just sentence under the circumstances of the case and declined Granados' request for a downward departure.  [Doc. 7, Ex. 4, p. 6.]  The Court sentenced Granados to the low end of the guideline range for a term of 41 months.  *See also* U.S. v. Granados, 2008 WL 2441045 (10th Cir. June 18, 2008).  [Doc. 7, Ex. 5.]

38.     The Court advised Granados that he had a right to appeal the final sentence of the court within ten days of the entry of judgment.  [Doc. 7, Ex. 4, p. 7.]

### ***Appeal***

39.     Defense counsel filed a timely notice of appeal at Granados' direction, arguing that Granados "wished to challenge the length of his sentence."  Granados, 2008 WL 2441045 at *1.  In its opinion denying the appeal, the Tenth Circuit observed that Granados' attorney filed an Anders brief stating that the "sentence was imposed in accordance with the law."  Id.  A copy of the Anders

brief was provided to the government and Granados.  Id.  Neither filed a response or opposition to the Anders brief.[4]

40.     The Tenth Circuit concluded that there was nothing presented to suggest Granados' guilty plea was made unknowingly or involuntarily.  Thus, the Court assumed the contrary; i.e., that the plea was knowingly and voluntarily made.  "It is in this setting that counsel in his Anders brief states that the sentence of 41 months imprisonment was 'in accordance with the law' and hence would not be a viable issue on appeal.  We agree."  Id. at *2.  The Tenth Circuit further noted that the sentence is presumptively reasonable if the district court properly considered the relevant guidelines range and sentences a defendant within that range.  While the defendant may rebut that presumption, Granados did not do so in his case.

> The fact that, in sentencing, the Texas court may have dealt lightly with the defendant does not belie the fact that defendant was convicted in the Texas court for Indecency with a Child, a crime of violence under Texas law.  Such, in and of itself, does not rebut the presumption of reasonableness to a sentence within the guidelines.

Id. at *3.

41.     On August 7, 2008, Granados filed this § 2255 motion.

## Analysis

42.     Only two of Granados' four claims need to be analyzed because two claims cannot survive in view of the record.  The first claim that fails includes allegations that Granados' defense counsel did not comply with Granados' request to appeal "his harsh sentence."  It is clear from the

---

[4]Counsel may file a motion to withdraw when a client lacks a meritorious argument.  Such motion is known as an Anders brief.  See Anders v. California, 386 U.S. 738 (1967) (court may grant counsel's motion to withdraw after counsel files brief exploring possible avenues of appeal and demonstrating that all lack merit).  This is what occurred here.  On appeal, Granados' attorney filed an Anders brief stating that the sentence imposed was in accordance with the law.  The Tenth Circuit permitted counsel to withdraw, agreeing with counsel that the sentence was imposed in accordance with law and would not be a viable issue on appeal.  2008 WL 2441045 at *2, 3.

record and the Tenth Circuit's opinion, that defense counsel filed an appeal on behalf of Granados. Moreover, contrary to Granados' assertions [Doc. 14, p. 1], the District Court Judge expressly advised Granados of his right to appeal his sentence during the sentencing hearing.  [Doc. 7, Ex. 4, p. 7.]  The sentencing hearing was translated in Granados' native language of Spanish.  Thus, it cannot be said that Granados was "not aware" of his right to appeal.  Indeed, as stated, his attorney filed an appeal on Granados' behalf.  In addition, according to Granados' attorney's affidavit, counsel stated that he specifically advised Granados not to sign a written plea agreement that would have required him to waive his appeal rights.  Counsel explained to Granados that by pleading to an Information, he retained his appeal rights.  [Doc. 7, Ex. 7, ¶ 7.]

43.     Granados may have confused his right to appeal with his opportunity to respond to the *Anders* brief filed by his attorney during the appeal.  Granados states in his reply that he could not have responded to the *Anders* brief because he did not understand it, his attorney did not mention it to him, and he never received it.  [Doc. 14, p. 2.]  Granados argues that his rights were violated when he did not receive a copy of the *Anders* brief and motion to withdraw during the appeal. Because of this alleged intentional violation, Granados demands that he be re-sentenced "to no more than 24-month" [sic].  [Doc. 14, p. 2.]

44.     It is true that Granados could have responded to the *Anders* brief.  However, his assertions that he never received the brief or motion to withdraw are flatly contradicted by the 10th Circuit's opinion denying his appeal.  The Tenth Circuit stated:  "A copy of the *Anders* brief was sent to the United States and a copy was also sent to the defendant.  The defendant did not file any "response" to his counsel's *Anders* brief, and the United States indicated that, under the circumstances, it would not file any brief in response . . . ."  2008 WL 2441045 at *1.

13

45.     Even if Granados did not receive or understand the *Anders* brief, there is no viable claim concerning that brief.  The Tenth Circuit reviewed the trial record and concluded that there was nothing to suggest that Granados' plea was made unknowingly or involuntarily.  "It is in that setting that counsel in his *Anders* brief states that the sentence of 41 months imprisonment was 'in accordance with the law' and hence would not be a viable issue on appeal.  We agree."  Id. at *2.  Thus, assuming Granados intended to argue he was provided ineffective assistance of counsel for the alleged failure to receive the *Anders* brief or counsel's alleged failure to translate the brief to Granados, there is no showing of prejudice.  The Tenth Circuit found, as a matter of law, that the sentence was presumptively reasonable.  Id. at *3.

46.     The other claim that cannot survive is Granados' assertion that his attorney provided ineffective assistance of counsel at trial.  No trial occurred in this case.  Thus, trial counsel could not have rendered ineffective assistance in a trial that did not take place.

47.     The two claims that remain are Granados' allegations that the government failed to disclose favorable evidence and allegations of ineffective assistance of counsel during the plea negotiations.

### ***Prosecution's Alleged Failure to Disclose Favorable Evidence to Granados***

48.     Granados did not raise this claim in his appeal.  *See* United States v. Granados, 2008 WL 2441045.  The appeal addressed Granados' sole claim, i.e., his "wish[] to challenge the length of his sentence."  Id. at *1.  There is no evidence that Granados was prevented from bringing this claim on direct appeal.

49.     "Review under § 2255 is not an alternative to appellate review for claims that could have been presented on direct appeal but were not."  United States v. Magleby, 420 F.3d 1136, 1139

(10th Cir. 2005), *cert. denied,* 547 U.S. 1097 (2006).  Consequently, if a defendant fails to raise an issue on direct appeal, he faces a procedural bar to raising that issue on collateral review.  United States v. Barajas-Diaz, 313 F.3d 1242, 1245 (10th Cir. 2002).  "To overcome the procedural bar, the movant must establish either good cause for not raising the issue earlier and resulting actual prejudice to his defense from the court's failure to consider this claim, or a fundamental miscarriage of justice from not considering the claim."  United States v. Hughes, 2006 WL 1675928, at *2 (10th Cir. June 15, 2006) (*citing* United States v. Cervini, 379 F.3d 987, 990 (10th Cir. 2004)), *cert. denied*, 544 U.S. 904 (2005).

50.     Granados did not demonstrate good cause for not raising this issue earlier on appeal or resulting actual prejudice to his defense or a fundamental miscarriage of justice.  Even if Granados did not have to raise this claim on appeal, i.e., if he could show circumstances that the failure to disclose exculpatory evidence prevented a knowing and voluntary plea, he has not identified any exculpatory material that was not disclosed.

51.     For example, to establish a Brady violation, Granados must demonstrate that "(1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense."  Banks v. Reynolds, 54 F.3d 1508, 1516 (10th Cir. 1995) (internal citations omitted).  Granados failed to supply evidence to meet any of the three requirements.

52.     Again, Granados did not identify any evidence that he believes the prosecution failed to disclose to him.  Instead, Granados alleges that the government "knowingly and intentionally violated" his right to a fair sentencing hearing by considering his prior conviction as a crime of violence which increased his base offense level by 16 levels.  Granados contends that the

government knew his prior conviction should be treated as an aggravated felony which would have required an increase of 8 levels instead of 16 levels.  [Doc. 1, p. 5, ¶ A.]

53.     Early in this case, the government wrote Granados' attorney a letter explaining that Granados did not qualify for "fast track treatment" because his criminal history included a crime of violence of other disqualifying type of felony conviction.  [Doc. 7, Ex. 1, April 5, 2007 letter.]  In that letter, government counsel provided the estimated base offense level of 24 which included the 16-level enhancement for a crime of violence.  In addition, the government attached to its April 5 letter documentation reflecting Granados' earlier conviction.  [Doc. 7, Ex. 2.]  One of the Texas court documents provided to Granados showed he entered a plea of guilty to "indecency - fondling" and received a 10-year sentence of probation.  Another attached court pleading showed an "unadjudicated judgment on plea of guilt or *nolo contendere* and suspending imposition of sentence" for a conviction of "indecency with a child – contact."  Thus, from the beginning of this case, Granados received documentation alerting him that his earlier conviction was considered to be a crime of violence sufficient to warrant a 16-level enhancement.

54.     The government noted in its response that Granados' prior conviction implicated a crime that was both an aggravated felony and a crime of violence.  While true that aggravated felonies would prompt an 8-level increase, the Sentencing Guidelines direct imposition of the greatest applicable enhancement. U.S.S.G. § 2L1.2.  Because Granados' conviction was also found to be a crime of violence, the 16-level enhancement was properly applied.

55.     Granados was informed of the 16-level enhancement at the inception of the case, during the plea hearing, and during sentencing.  He voluntarily and knowingly pled guilty in accordance with the agreement he reached with the government.  Moreover, at the sentencing

hearing, Judge Armijo found that Granados' prior crime for Indecency with a Child was a crime of violence.  [Doc. 7, Ex. 4, p. 6; PSR ¶ 12.]  On appeal, the Tenth Circuit also found that the prior conviction was a crime of violence.  [Doc. 7, Ex. 5.]  The pertinent Texas statute under which Granados was convicted has been held to be "sexual abuse of a minor," which is a crime of violence.  *See* United States v. Najera-Najera, 519 F.3d 509, 511 (5th Cir.), *cert. denied*, __ U.S. __, 2008 WL 2364262 (Oct. 6, 2008); *see also* V.T.C.A., Penal Code § 21.1.

56.     Finally, there is nothing in the record to support a finding that the sentencing hearing was unfair.  At the sentencing hearing, defense counsel noted that the PSR was read in Spanish to Granados.  Defendant raised no factual disputes with the PSR, which expressly identified Granados' prior conviction as a crime of violence subject to a 16-level increase.  [PSR, p. 5, ¶ 12.]  Granados spoke at the sentencing hearing and made no objection to the PSR or the 16-level increase.  During sentencing, counsel for the government stated that a 16-level enhancement was "absolutely a proper imposition."  The sentencing hearing was translated into Spanish.  Defense counsel was given several other opportunities to object but did not do so.  [Doc. 7, pp. 6, 7.]

57.     For the above-stated reasons, the Court recommends that Granados' claim that the government failed to disclose information that was favorable to him or his related claim that the sentencing hearing was not fair, be dismissed, with prejudice.

### ***Alleged Ineffective Assistance of Counsel During Plea Negotiations and Hearing***

58.     To prevail on an ineffective assistance claim, Granados must demonstrate deficient performance and prejudice.  Strickland v. Washington, 466 U.S. 668, 687, *reh'g denied*, 467 U.S. 1267 (1984).  In the context of a plea, he must demonstrate that but for his counsel's deficient performance, he would have insisted upon a trial.  Hill v. Lockhart, 474 U.S. 52, 59 (1985).  If the

attorney does not explain the probable sentencing consequences from a plea, this could render a defendant's plea involuntary.  *See* United States v. Williams, 919 F.2d 1451, 1456 (10th Cir. 1990) ("[b]oth the attorneys and the court have a duty to apprise the defendant of the consequences of the plea and ensure that it is voluntary.  If these duties are not discharged, the defendant is not 'fully aware' of the consequences of the plea and it is therefore involuntary.")

59.     Here, Granados initially did not claim that his plea was involuntary.  He did not seek to have his plea withdrawn or voided.  The only relief he appeared to seek was to have the term of incarceration, to which he was sentenced under the agreement reached with the government, reduced.  The appropriate remedy for a defendant who asserts in post-conviction proceedings that his plea was involuntary is withdrawal of the plea.  *See* Gill v. Turner, 443 F.2d 1064, 1066 (10th Cir. 1971) (state should be allowed to re-try prisoner entitled to federal habeas relief before writ is actually issued).  *See also* United States v. Wright, 43 F.3d 491, 494 (10th Cir. 1994) (having pled guilty, a defendant's only avenue for challenging his conviction is to argue that he did not voluntarily or intelligently enter his plea; the movant is barred from raising claims other than those which go to the knowing and voluntary nature of his plea).

60.     In his reply, however, Granados asserts that his plea "was entered unknowingly and involuntarily" because the Court made no effort to verify that Granados and his attorney had read and discussed the PSR or that his attorney explained the facts set forth in the PSR.  Granados also argues that the Court never asked him if his attorney had read the PSR to him before the sentencing hearing and that if he had been asked, he would have said no one had read it to him or explained to him "anything of what I was pleading guilty too [sic]."  [Doc. 14, p. 2.]  Again, Granados' assertions are belied by the record.  At the sentencing hearing, Granados' attorney stated that the PSR had been

18

read to Granados in its entirety in his native language and that Defendant had no factual disputes with the PSR.  [Doc. 7, Ex. 4, p. 2.]  The Court is entitled to rely on the statements made by Granados' attorney who is an officer of the Court.  In addition, Granados' attorney signed an affidavit in which he stated that he reviewed the PSR with Granados and that Granados did not dispute any of the statements in the PSR or the criminal conviction that contributed to his adjusted offense level and criminal history score.  [Doc. 7, Ex. 6, ¶ 9.]

61.     Granados argues that his attorney "assured him that by [waiving his indictment] . . . he will get no more than 24 months imprisonment."  [Doc. 1, p. 5.]  Granados concedes that counsel made the argument to the Court that Granados should receive no more than 24 months imprisonment but states that "such one minute argument was unacceptable because counsel failed to argue that defendant [sic] prior conviction was an aggravated felony."  [Doc. 1, p. 5, ¶ B.] Granados also asserts that his attorney and the government conspired "in rushing petitioner to waive his indictment and other rights . . . and to make him to [sic] enter a plea of guilty without knowing that he might and will get more than 24 months imprisonment . . . ."  [Doc. 1, ¶ C.]  He claims that his defense counsel failed to investigate the prior Texas state conviction or to get a statement from the alleged victim and the victim's mother.  [Doc. 14, p. 2.]

62.     Even assuming Granados seeks to withdraw the plea, the evidence demonstrates that his plea was voluntary and knowing.  Granados received explicit information at the inception of the case regarding the nature and effect of his prior conviction.  He was told his advisory guideline range was 41 to 51 months of imprisonment.  The transcript of the plea hearing shows that  all of the pertinent documents, as well as the hearing itself, were translated in Spanish.  The Court fully explained to Granados during the plea hearing that he could proceed to a trial.  Granados testified

at the plea hearing that he understood he faced a maximum sentence of 20 years of imprisonment and that it was possible he could be sentenced to that maximum term. Granados further testified that he was not forced or coerced into pleading guilty and that he pled guilty out of his free will.

63.     Granados' trial attorney supplied an affidavit stating that counsel reviewed the government's plea offer and discovery with Granados. That information showed that Granados had been convicted of a crime of violence. Counsel testified that he explained Granados' criminal history category and that it would result in an advisory guideline range of 41-51 months of imprisonment. Counsel further averred that he did not tell Granados that Granados faced a sentence of either 24 or 27 months of incarceration. [Doc. 7, Ex. 6, ¶¶ 4, 5.]

64.     Even if counsel had sought to obtain statements from the victim and victim's mother with respect to the earlier conviction, and even if the statements read the way Granados believes they would, this would not change the fact of Granados' conviction for an aggravated felony or the fact that he was still on probation for that conviction when he was charged in this underlying criminal matter. Similarly, Granados' claim that he was innocent of the Texas crime and that he pled guilty to that crime only because his Texas attorney assured him that he would not spend one day in prison [Doc. 14, p. 5.] would not change the fact of his conviction for an aggravated felony.

65.     Defense counsel stated that Granados had no defense to the crime charged and that he would likely have been convicted at trial. Indeed, Granados apologized to the Court and conceded he was guilty of each element of the crime. According to defense counsel's affidavit, Granados told counsel that he wanted to plead guilty. [Doc. 7, Ex. 6, ¶ 8.] If Granados had been convicted at trial, he would have faced at least 16 additional months in prison. [Doc. 7, Ex. 6, ¶ 6.]

Counsel also reviewed the PSR with Granados, and Granados did not dispute any of the statements in the PSR or the criminal conviction that contributed to his adjusted offense level and criminal history score. While counsel knew he had no basis to challenge the adjusted offense level, he did his best to request a sentence of 24 months. [Doc. 7, Ex. 6.]

66. Granados personally addressed the Court, expressed remorse and implied that the judge should give him a lighter sentence. He clearly understood that he could be given a sentence within the guideline range. A sentence within the guidelines is presumed both reasonable and appropriate. United States v. Rita, __ U.S. __, 127 S.Ct. 2456, 2462-63, *reh'g denied*, 128 S.Ct. 19 (Aug. 20, 2007).[5]

67. Granados has not presented any evidence to show deficient performance by counsel or prejudice. Nor did he argue or demonstrate that he would have proceeded to trial, but for the information he allegedly received. To prove deficient performance, Granados must overcome the presumption that counsel's conduct was constitutionally effective. Duvall v. Reynolds, 139 F.3d 768, 777 (10th Cir.), *cert. denied*, 525 U.S. 933 (1998). In this case, Granados' trial attorney vigorously advocated on behalf of Granados. He asked for the Court's leniency and he filed a sentencing memorandum on behalf of Granados. He diligently sought to persuade the trial judge at sentencing to impose a lesser sentence. He made the only arguments he could have made under the circumstances.

---

[5]At the time of sentencing, the district court errs when it applies a presumption of reasonableness to a sentence in the guidelines sentencing range. *See, e.g.,* United States v. Begay, 470 F.3d 964, 975-76 (10th Cir.2006). At the appellate level, however, a within-guideline range sentence that rests on the reasoned judgment of the United States Sentencing Commission and the sentencing judge is presumed reasonable. *See* Rita, 127 S.Ct. at 2463.

68.     The Court concludes that Granados understood that he could be sentenced to more than 24 months and that he voluntarily and knowingly entered into the plea agreement.  The Court further determines that there is no evidence to demonstrate ineffective assistance of counsel.  Thus, the Court recommends that Granados' claims of ineffective assistance of counsel in relation to Granados' plea and sentencing be denied and dismissed with prejudice.

## Recommended Disposition

That Granados' § 2255 motion [Doc. No. 1] be denied and that the case be dismissed with prejudice.

Alan C. Torgerson
UNITED STATES MAGISTRATE JUDGE

22